Filed 6/11/21  P. v. Walker CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074784 |
| v. | (Super.Ct.No. FVI19002473) |
| TOMMY RAY WALKER, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Debra Harris, Judge. Affirmed.

Thien Huong Tran, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

1

On August 26, 2019, defendant and appellant Tommy Ray Walker, Jr., physically attacked his fiancée at their home because she would not give him the cell phone they shared. Later that day, he approached her while she was sitting inside a friend's car, broke the window, and attempted to retrieve the cell phone. A jury convicted him of inflicting corporal injury on a cohabitant (Pen. Code,[1] § 273.5, subd. (a), count 1) and misdemeanor vandalism (§ 594, subd. (a), count 2). Separately, defendant admitted to having previously suffered two convictions for inflicting corporal injury on a cohabitant within the past seven years, and the trial court found a prior strike allegation to be true.[2] (§§ 273.5, subd. (f)(1), 667, subds. (b)-(i), 1170.12, subds. (a)-(d).) The court sentenced him to state prison for 10 years. On appeal, defendant contends his convictions must be reversed because the court failed to give the jury a unanimity instruction sua sponte. We reject his contention and affirm.

## I. PROCEDURAL BACKGROUND AND FACTS

In August 2019, defendant and the victim were engaged, had been living together for three years, and were coparenting defendant's three children and the victim's one child. The couple shared a cell phone.

On August 26, 2019, around 3:30 p.m., Officer Sanchez responded to a 911 call and observed broken glass outside the passenger's side window of a gold Honda sedan. The victim's face was bleeding, and she was transported to the hospital where the officer

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] The trial court did not find prior prison term allegations to be true.

2

interviewed her. The victim reported the following: During the early afternoon,[3] she confronted defendant about a text message received on the phone from another woman, and they argued. To avoid conflict, she left the house with the phone and walked around the block. As soon as she returned, defendant demanded the phone, but she denied having it. As she tried to walk away, defendant "began to strike her in the face using both hands with closed fists." He followed her and continued to assault her by kicking her, causing her to fall to the ground, grabbing her by the hair, dragging her across the floor of the house, and slapping her in the face. When she was able to get outside, defendant "struck her in the face four times with closed fists." The victim's friend, C.C., picked her up around 2:00 p.m. Officer Sanchez observed the victim's injuries, including "a cut to her forehead, a gash to her eye, blood trickling in three different directions, and a black eye to her left eye, and bruising, and swelling to her face." The victim accused defendant of causing her injuries.

When C.C. picked up the victim, there was bruising, but no bleeding, around the victim's face, and the victim was upset, "crying a bit, a little bit hysterical." Around 3:15 p.m., C.C. drove the victim to pick up her son from the babysitter. When they arrived at the babysitter's house, defendant was there, "waiting for" the victim. As C.C. pulled up, defendant quickly went to the front passenger window—which was opened an inch or two— and started yelling at the victim to give him the phone. The victim refused, and defendant continued yelling at her and pounding on the passenger side window and door. The victim

---

[3] The victim testified that defendant worked the night shift and went to sleep after getting home that morning. One of the children did not go to school until the afternoon. After that child went to school, the victim looked at the text messages on the phone.

told C.C. to call the police. C.C. looked away for a moment and heard the sound of glass breaking. The window shattered, and there was glass inside and outside the car. Defendant stuck his upper body into the car, grabbed the victim by her hair, and attempted to grab the phone. C.C. called 911, and defendant left.

At trial, the victim did not recall telling Officer Sanchez that defendant kicked her, dragged her by her hair, slapped her, or hit her in the face. She claimed that she was the aggressor who hit and grabbed defendant as he was trying to leave the house. She testified that her injuries resulted when she slipped and fell, hitting a dresser or the floor, while attempting to prevent him from leaving. She stated that after defendant left the house, she called a "customer" of the Circle K to pick her up, and then called C.C. She acknowledged telling Officer Sanchez that defendant assaulted her, but she stated that she "was not truthful in [her] police report." Regarding the broken window, the victim claimed there were already cracks in the window, and it "just broke" when defendant reached through it.

C.C. testified there were no cracks on the front passenger window of her 2004 Honda Accord. However, she admitted that the window "stuck a bit" but would "go up and down with some help."

The parties stipulated that defendant suffered two felony convictions for "inflicting injury on a fellow parent," in violation of section 273.5, subdivision (a), one on February 11, 2015, and another on June 27, 2016.

## II. DISCUSSION

Defendant contends the trial court erred by failing to give a unanimity instruction sua sponte since there was evidence of two separate physical altercations that occurred on a single day, either of which could have been the basis for count 1, inflicting corporal injury on a cohabitant. The People disagree, asserting the prosecutor elected the acts that formed the basis of count 1 during closing argument and, thus, no unanimity instruction was needed. We agree with the People.

In California, a jury verdict in a criminal case must be unanimous (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 446), and "'the jury must agree unanimously the defendant is guilty of a *specific* crime. [Citation.] Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act.'" (*People v. Covarrubias* (2016) 1 Cal.5th 838, 877-878.) We review instructional errors de novo. (*People v. Selivanov* (2016) 5 Cal.App.5th 726, 751.)

The prosecution may elect the specific act relied upon to prove the charge to the jury by "'tying each specific count to specific criminal acts elicited from the victims' testimony'—typically in opening statement and/or closing argument. [Citations.] Such an election removes the need for a unanimity instruction. [Citation.] [¶] Under these principles, there is an implicit presumption that the jury will rely on the prosecution's election and, indeed, is bound by it. This does not violate the rule that the attorneys' remarks are not evidence. (See CALCRIM No. 222.) The evidence still comes solely from the witnesses. Nor does it violate the rule that the jury must follow the law as given in the jury

5

instructions and must disregard the attorneys' remarks to the extent that they conflict with the jury instructions. (See CALCRIM No. 200.) There is no such conflict. The prosecutor is merely doing his or her job—urging the jurors to apply the law to the facts in a specific way so as to come to a specific verdict." (*People v. Brown* (2017) 11 Cal.App.5th 332, 341.)

Here, during closing argument, the prosecutor argued that count 2, misdemeanor vandalism, was supported by evidence of defendant intentionally breaking C.C.'s car window. The prosecutor responded to the victim's testimony that defendant accidentally broke the already cracked window when he leaned into the car, by pointing to C.C.'s testimony that there were no cracks in her car window and her 911 call reporting defendant was inside her car, striking the victim.[4] The prosecutor referenced defendant striking the

---

[4] "I wanna focus on Count 2 first, the vandalism—because I think it's a bit more straight forward—that the defendant maliciously damaged or destroyed property. The testimony of [C.C.], the 911 call, she says he broke the window with his hands. We heard from [C.C.] there was no tape on the windows. There were no cracks in the windows. It stuck a little bit; a little help, and it was fine. It wasn't flimsy. It wasn't ready to give way in any way. [¶] And that's substantiated by [the victim's] original statement to Officer Sanchez. He broke the window. And why did he do it? To continue his attack on [the victim]. To get that cell phone. To put her in her place. He did it maliciously. He broke that window to get at [the victim]. It wasn't him just leaning in on accident. It wasn't him sticking his arm in. How do we know that? [C.C.'s] testimony, this bystander watching her friend be attacked, she told us that window was down a little bit. [¶] How was [defendant] gonna lean in and accidentally break the window when there's just this much space? That's not gonna happen. This wasn't an accident. [¶] Underscoring that is where the window is found. [C.C.'s] testimony and that 911 call say the window is outside of the car. Officer Sanchez told you when he approached he could see the glass outside of the car. It looked like, to him, someone had broken the window off and dropped it. That is not somebody leaning into the window. That is somebody who is angry. That is rage. That is what the defendant did because [C.C.] told you that once the window was broken, 'he was inside my car.' What does that mean? His upper half was in the car struggling with [the victim]. [¶] In the 911 call you can hear when [C.C.] says, 'I saw him strike her because that's what he was doing.' This wasn't an accident. This was absolutely intentional. This was decision

*[footnote continued on next page]*

victim to support his argument that defendant intentionally broke the car window.  Moving

on to count 1, the prosecutor argued that inflicting corporal injury on a cohabitant was

supported by the evidence of defendant's physical attack on the victim, while they were at

their home.**5**

---

making by the defendant to show the victim where she stood, to continue that vicious attack.
[¶]  And as for Element 2, [C.C.] told you 'this was my car.'  She had co-signed on the
Nissan—on the Versa, the 2019 Versa, that was a car belonging to [defendant], and [C.C.],
and [the victim] but this one was hers.  That gold Honda did not belong to the defendant.  He
broke property not belonging to him.  He's guilty of this vandalism."

  **5**  "[Section] 273.5, inflicting injury on [the victim] resulting in a traumatic
condition, . . . the elements that the defendant willfully inflicted the physical injury on [the
victim], someone with whom he's had a dating relationship or was a cohabitant, that
relationship is the easy part.  I don't think there's a lot of argument there. . . .  [T]hey were
cohabiting.  They were dating, she told you, over three years with this man . . . .  Her fiancé,
someone she planned on marrying—someone she loved.  That relationship is not up for
debate.  [¶]  But let's look at Element 1, the defendant inflicted physical injury.  [¶]  [The
victim's] original statement to Officer Sanchez, 'We were arguing over the phone.  I left.  I
came back.  We argued some more.  I tried to leave again and that's when he hit me.'  [¶]
That's when the defendant struck her over and over and as she tried to get away.  He kicked
her, causing her to fall.  She got back to her feet.  He kicked her again causing her to fall a
second time.  And this time, he wasn't letting her get up.  He kicked her once in the ribs, he
kicked her again in the stomach, and then he grabs her.  He grabs her by the hair and drags
her across the floor putting her in her place beneath him.  She's not to stand up to him.  She
shouldn't be confronting him.  He's flirting with other women.  So what?  She shouldn't be
standing up to him and now he's letting her know.  [¶]  And just to insult her, he starts
slapping her.  Slaps her with an open hand in the face, and then she gets away or—no,
because he comes back.  He punches her four more times in the face before she's finally able
to get away."
  "Ladies and gentlemen, if that's not inflicting physical injury, I'm just not sure what
is.  But did that result in a traumatic condition?  Did it result in a wound, whether minor or
serious, that was caused by that physical force?  Did all of this combined equal this?  [¶]  The
pictures were a little washed here but . . . look right here under [the victim's] eye.  Look at the
swelling.  Look at the bruising.  And we heard this . . . from Officer Sanchez who said there
was swelling to the entire left side of her face.  We heard this from [C.C.]  [¶]  [C.C.] said
that when she picked up [the victim, she] got in the car and she could see swelling.  She could
see some bruising to the left side of her face, and that makes sense if someone's getting in on

*[footnote continued on next page]*

7

Nonetheless, defendant asserts the prosecutor's reference to defendant being angry and

striking the victim, once he was inside the car, makes it "evident that either the home incident

---

the passenger's side of your car. . . . And [C.C.] told us they talked about the argument. [¶] But you know what [C.C.] did not see—and this is important—she didn't see blood. There was no blood. . . . [¶] There's additional injury as detailed by Officer Sanchez, the scratches which [the victim] told him, 'I suffered at some point . . . . I couldn't figure out when but it was during this attack.' It was during the attack by the defendant. [¶] But we have [the victim's] new story. We have what she told you on the stand. When she was upset because of text messages, that she hit the defendant first, that the defendant never hit back. But most important, that [the victim] tripped and hit a dresser. She said that's how the injury to her eye was caused . . . the left eye, that's how the injury to her eye was caused but the truth is [her] new story does not make any sense. It's a completely different story well after the incident— not at the time when she would have been the most truthful, right after the event. [¶] She didn't call police. They came to her. They started asking her questions as she sat in a hospital room getting treated for the cut to her eye, for the bruising to her face, the cut to her forehead, the pain she was experiencing elsewhere on her body. And she told the truth. [¶] This—this prior story, not the truth. And we know that because of certain inconsistencies in [the victim's] story."

After pointing out the inconsistencies in the victim's testimony, the prosecutor continued: "[The victim's] entire story is built on this tripping and falling, and it's just not true. It does not line up with the facts as we know them. [¶] But why—why do this? Why lie? Why create this story? [¶] To protect the man she loves. . . . She's not telling you the truth because she wants to protect someone she loves, and that's understandable but it's not acceptable. It's not acceptable to allow someone to do this but that's what he did. He attacked her savagely after flirting with other women because she stood up to him. [¶] The other portion of the evidence that we can use to look to, to say [the victim's] new story—the story she told you on the stand isn't true—is the defendant's prior convictions for domestic violence. Those two prior convictions for felony domestic violence 273.5 in 2015 and 2016, how do we use those? How do we use those? [¶] We look to Section 852(a) to help us figure out what type of person the defendant is. Because we can deduce from those prior convictions that he is the type of person inclined to commit these types of acts; that he is disposed to committing acts of domestic violence, which is what he did on August 26th, 2019. He struck [the victim] over and over. He kicked [the victim] again and again. He drug [*sic*] her by the hair, he slapped her in the face, all before punching her again four more times in the face. He broke [C.C.'s] window intentionally to get back at [the victim]. [¶] And I would submit to you, I'm asking you to realize that the evidence is clear; that there is only one decision to be made, and that is to find the defendant guilty of vandalizing [C.C.'s] vehicle, and to find the defendant guilty of inflicting injury and a traumatic condition on [the victim]."

or the car incident could have been viewed by the jury as the basis for the corporal injury charge." He further asserts that this "understanding is reflected in defense counsel's own closing remarks" regarding the lesser included offense to the charge of inflicting corporal injury on a cohabitant.[6] We disagree.

The prosecutor's reference to defendant's demeanor and assaultive behavior when he broke the car window was made to show defendant's actions were intentional, not accidental. Appellate counsel's use of defense counsel's discussion regarding the lesser included offense of simple battery belies defense counsel's closing argument. According to defense counsel, the victim was injured, if at all, when she attempted to prevent defendant from leaving their home (the home incident), and not during the car incident. After detailing the victim's account of how she was injured trying to stop defendant from leaving their home, defense counsel stated: "Now, if you review all the testimony, that is the only time that she indicated that she could have injured herself that way; not that she was injured in the car after the window was broken. [C.C.] didn't say anything about that. Somebody would have stuck

_____

[6] Defense counsel argued: "[The judge] is going to tell you about [section] 273.5 that's charged. [Sections] 243(e), 242 and 240 . . . . [¶] And you'll have to read those carefully when you decide what it is that happened here, if anything. [¶] [Section] 242 is simple battery. [¶] 'A person did something willfully. When he acted, he was aware of facts that would lead a reasonable person to realize that some application of force might come to someone.' [¶] So, in other words, when you're reaching your arm through a slit in the window and trying to grab a phone, you'd have to realize that if you keep doing that, there's a chance that window might break and it might apply force to someone; it might actually cause glass to fly around and get somebody cut. [¶] Someone commits an act willfully if he does it willingly or on purpose. This is where you'll have to make the decision yourself. [¶] And the term 'application of force' means to touch someone in a harmful or offense manner. The slightest touching can be enough if it is done in a rude or angry way. [¶] Now, if my client is guilty of anything, that sounds much more reasonable than the story that the government wants you to believe."

their—half of their body in the car and is banging her—you think [C.C.] would have known that? Yeah. But she didn't see that. She didn't hear that. She said it didn't happen."

Defense counsel later added: "Was [defendant] trying to get at [the victim]? What was he trying to get at? He's trying to get the phone; that's what this was all about. 'Give me the phone. Give me the phone' reaching in the window." Defense counsel also argued that the fact C.C. called 911 after the car window was broken means "she didn't see or hear or know of anything to call the cops for before that point. If you were sitting in a car with your friend and she's getting' beat up, maybe then you'll call the cops. If you see your friend getting kicked, maybe you'll call the cops. She must not have seen that because she didn't call the cops until the window was broken." Relying on the prosecutor's election and the victim's trial testimony, defense counsel maintained that the victim was injured during the home incident. Nonetheless, since the victim was taken to the hospital as a result of defendant breaking C.C.'s car window, defense counsel urged the jury to find defendant guilty of simple battery based on his willful act of "reaching [his] arm through a slit in the window and trying to grab [the] phone."

Because the prosecutor's closing argument made it clear that he had elected the home incident to support the inflicting corporal injury on a cohabitant charge, the trial court was not required to instruct the jury sua sponte on the need for unanimity as to that count. (See *People v. Mayer* (2003) 108 Cal.App.4th 403, 418-419.)

### III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

Acting P. J.

We concur:

FIELDS

J.

MENETREZ

J.